UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| QFS TRANSPORTATION, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   No. 1:22-cv-02356-TWP-MJD |
| | ) |
| INTERMODAL CARTAGE CO,. LLC. d/b/a | ) |
| INTERMODAL CARTAGE, LLC, et al., | ) |
| | ) |
| Defendants. | ) |

**ORDER ON MOTION TO AMEND COMPLAINT**

This matter is before the Court on Plaintiff's Motion for Leave to File Amended Complaint and to Join Additional Defendants, [Dkt. 31]. For the reasons set forth below, the motion is **GRANTED IN PART** and **DENIED IN PART**.

### I.  Background

Plaintiff filed this case in state court; it was removed to this court on the basis of diversity jurisdiction.  *See* [Dkt. 1].

Plaintiff's allegations in its Complaint are as follow.  Plaintiff is a "federally licensed motor carrier that specializes in the shipment of intermodal shipping containers," which are "large shipping containers that can be used across different modes of transport—including ships, rail, and trucks—without unloading the cargo that these containers hold at each transition point." [Dkt. 1-2 at 5.]   Defendants are federally licensed freight brokers who contracted with Plaintiff "to accept and ship certain intermodal freight . . . in exchange for payment of agreed-upon

shipment and other rates." *Id.* at 6.  Defendants agreed to abide by the terms set out in Plaintiff's "Rules Circular."  Plaintiff seeks recovery of $192,900.00 in freight charges, including per-diem and/or demurrage charges, that it alleges Defendants owe and have failed to pay.  *Id.* at 9.  Plaintiff asserts three alternative claims:  breach of contract; unjust enrichment; and complaint on account.  *Id.* at 9-11.

Plaintiff seeks to amend its Complaint to add three additional defendants (hereinafter referred to as the "Consignee Defendants").  Each of the Consignee Defendants received some of the goods that were transported by Plaintiff pursuant to its contract with Defendants and therefore is a "consignee[] of some of the freight loads for which [Plaintiff] has not been paid." [Dkt. 31-1 at 3.]  Plaintiff alleges that "[p]ursuant to the Invoices pertaining to these loads and applicable federal law, the Consignee Defendants are directly liable to QFS, the carrier for these freight charges." *Id.* at 9.  In addition to its claims against the original Defendants, in its Proposed Amended Complaint Plaintiff asserts claims against the Consignee Defendants for violation of 49 U.S.C. § 13706 and, in the alternative, unjust enrichment.

## II.  Discussion

As Defendants recognize, pursuant to Federal Rule of Civil Procedure 15(a)(2), leave to amend should be given "freely … when justice so requires."  However, Defendants argue that this is one of the circumstances in which leave to amend should not be granted—when the amendment would be futile.  *See Kap Holdings, LLC v. Mar-Cone Appliance Parts Co.*, 55 F.4th 517, 529 (7th Cir. 2022) ("[A] district court may deny leave to amend if amendment would be futile.") (citations omitted).  In determining the futility of a proposed amendment, the "legal sufficiency standard of Rule 12(b)(6)" is applied "to determine whether the proposed amended complaint fails to state a claim." *Id.* (citation omitted).

2

### A. Proposed Unjust Enrichment Claims

Defendants argue that it would be futile to allow Plaintiff to assert its proposed unjust enrichment claims against the Consignee Defendants because, under Indiana or Tennessee law,[1] "[w]hen the rights of the parties are controlled by an express contract, recovery cannot be based on a theory implied in the law, such as unjust enrichment." [Dkt. 33 at 7.] However, the only express contracts pointed to by Defendants are contracts between Plaintiff and Defendants.[2] Defendants, citing *Schueck Steel Co. v. Galvpro, L.P.*, 2003 WL 21277205, at *6 (S.D. Ind. May 22, 2003), argue that the existence of those contracts precludes a claim of unjust enrichment against the Consignee Defendants because those contracts governed "the disputed relationship"; that is, the contracts governed the responsibility for paying the shipping charges for the shipments the Consignee Defendants received. However, Defendants fail to explain how those contracts govern the **relevant** relationship—that is, the relationship between Plaintiff and the Consignee Defendants. In *Schueck Steel Co.*, the defendant in the unjust enrichment claim was named as a third-party beneficiary in the express contract; thus, that defendant was one of the parties whose relationship was defined by the express contract.

The Indiana Supreme Court rejected the argument that the existence of an express contract barred an unjust enrichment claim against a non-party to the contract in *Zoeller v. E.*

---

[1] Defendants argue that either Indiana or Tennessee law would apply to the proposed unjust enrichment claims and that there is no relevant distinction between the two. The Court will assume that to be the case for purposes of this ruling.

[2] The parties dispute which contract or contracts apply in this case. *See* [Dkt. 33 at 2] ("The Court will determine which contract governs when it rules on IMC's and IMCNA's fully briefed motion to transfer. *See* ECF Nos. 20, 30, and 32. But as discussed below, the relevant point for disposition of QFS' motion to amend is not which contract applies—it is that *some* contract applies to the shipping charges at issue here.") (emphasis in original).

3

*Chicago Second Century, Inc.*, 904 N.E.2d 213 (Ind. 2009). In that case, Showboat Marina Partnership entered into a local development agreement with the City of East Chicago.

> Under the agreement, Showboat agreed to "contribute annually to and for the benefit of economic development, education and community development in the city" an amount of total contribution equal to 3.75% of its adjusted gross receipts, as defined by Ind. Code § 4-33-2-2, in the event Showboat received a license from the Indiana Gaming Commission and began operating a casino in East Chicago. Showboat proposed that of the total contribution 1% be allocated directly to East Chicago; 1% to the Twin City Education Foundation, a non-profit corporation; 1% to the East Chicago Community Foundation, another non-profit; and 0.75% to East Chicago Second Century, Inc., a for-profit corporation. The agreement also included promises that Second Century would undertake development activities at sites within East Chicago, that all projects pursued by Second Century would conform to the City's development and master plans, and that all Second Century projects would require approval from the City.

*Zoeller*, 904 N.E.2d at 217. Showboat received the license and operated the casino, which subsequently changed hands numerous times. At some point, the Indiana Attorney General investigated and determined that Second Century had received about $16 million dollars from the casino operation and that "much of the $16 million could not be accounted for and could be traced to Second Century's principals," *id.*; in other words, the money had not been used for development activities as required by the local development agreement. The Attorney General eventually sought to assert a claim of unjust enrichment against Second Century. Second Century argued, *inter alia*, that "the unjust enrichment claim is unavailable because the local development agreement specifically addressed the subject matter of the funds that Second Century should receive." *Id.* at 220. The Indiana Supreme Court rejected this argument, holding that "[t]here was an express contract in this transaction, but it was not one to which the Attorney General or the State were parties. Showboat entered into the local development agreement with East Chicago. That transaction is thus not a bar to the Attorney General's claim for unjust enrichment, an equitable remedy." *Id.* at 221.

4

So too here, there may be an express contract governing the shipments that the Consignee Defendants obtained and the payment of the shipping costs, but Defendants do not point to any contract to which the Consignee Defendants were parties. The contracts pointed to by Defendants did not govern the rights or obligations of the Consignee Defendants, and therefore cannot bar an unjust enrichment claim against them. *Accord Kalos, LLC v. White House Vill., LLC*, 2021 WL 1022752, at *5 (M.D. Tenn. Mar. 17, 2021), *aff'd sub nom. Kalos, LLC v. Twin Springs at White House, LLC*, 2022 WL 59617 (6th Cir. Jan. 6, 2022) (cited by Defendants) ("Because Plaintiff admits in its Complaint that it had a valid contract, Plaintiff cannot recover under an unjust enrichment theory **from the party or parties with whom it had a contract**." (quoting *Whitehaven Cmty. Baptist Church v. Holloway*, 973 S.W.2d 592, 596 (Tenn. 1998)) (emphasis added); *see also Morris Pumps v Centerline Piping, Inc*, 273 Mich. App 187, 194-195; 729 NW2d 898 (2006) (explaining that an express agreement will only bar a claim for unjust enrichment if the express agreement was "between the same parties"); *Madani v. Volkswagen Grp. of Am., Inc.*, 2019 WL 3753433, at *11 (N.D. Cal. Aug. 8, 2019) ("actions in quasi-contract cannot lie when an express contract **between the same parties** governs the subject matter in question") (emphasis added); *Oldnar Corp. v. Panasonic Corp. of N. Am.*, 766 F. App'x 255, 265-66 (6th Cir. 2019) ("If there is a valid enforceable contract **between the same the parties** on the same subject matter, a plaintiff may not recover under a theory of unjust enrichment." (emphasis added) (citations and internal quotation marks omitted); *Gociman v. Loyola Univ. of Chicago*, 41 F.4th 873, 886 (7th Cir. 2022) ("[W]hen a contract governs the relationship between two parties, unjust enrichment has no application.") (citations and internal quotation marks omitted).

Because Plaintiff does not allege, and Defendants do not suggest, that there was an express contract that governed the relationship between Plaintiff and the Consignee Defendants, Plaintiff is not precluded from asserting unjust enrichment claims against the Consignee Defendants based on the existence of an express contract. Defendants therefore have not demonstrated that the unjust enrichment claims would be futile. Plaintiff's motion to amend is **GRANTED** as to those claims.

### B. Proposed Claims under Section 13706(a)

In its Proposed Amended Complaint, Plaintiff asserts that, pursuant to "the Invoices pertaining to these loads and applicable federal law," [Dkt. 31-1 at 9], each of the Consignee Defendants is liable for the freight charges that have not been paid by Defendants relating to the shipments the Consignee Defendant received. The only federal law pointed to by Plaintiff is 49 U.S.C. § 13706(a). That statute reads as follows:

> (a) Liability of consignee—Liability for payment of rates for transportation for a shipment of property by a shipper or consignor to a consignee other than the shipper or consignor, is determined under this section when the transportation is provided by motor carrier under this part. When the shipper or consignor instructs the carrier transporting the property to deliver it to a consignee that is an agent only, not having beneficial title to the property, the consignee is liable for rates billed at the time of delivery for which the consignee is otherwise liable, but not for additional rates that may be found to be due after delivery if the consignee gives written notice to the delivering carrier before delivery of the property—
>
> (1) of the agency and absence of beneficial title; and
>
> (2) of the name and address of the beneficial owner of the property if it is reconsigned or diverted to a place other than the place specified in the original bill of lading.

Defendants argue that permitting Plaintiff to assert a claim pursuant to this statute against the Consignee Defendants would be futile. Defendants' argument is based entirely on the following statement in *Cent. Freight Lines, Inc. v. United States*, 87 Fed. Cl. 104, 112 (2009)[3]:

> In the alternative, the court agrees with the defendant that under the court's holding in *Fikse* [*& Co. v. United States*, 23 Cl. Ct. 200 (1991)]*,* Section 13706 does not create liability in the consignee for shipping charges where there is a contract allocating these charges elsewhere. See *Fikse,* 23 Cl. Ct. at 204. Regardless of whether the carrier is deemed a "common" or "contract" carrier, the salient fact is whether or not a contract exists allocating shipping charges. As such a contract exists here and allocates shipping charges to Dispatch, Section 13706 does not apply and, therefore, provides no basis for this court's exercise of jurisdiction.

Defendants provide no analysis of the legal basis for this statement, and therefore fail to provide the Court with any reason why it should follow this non-binding precedent. "It is not this court's responsibility to research and construct the parties' arguments." *Draper v. Martin*, 664 F.3d 1110, 1114 (7th Cir. 2011).

That said, however, Defendants also argue later in their brief that the Court would lack subject matter jurisdiction over this case because Section 13706 does not create a federal cause of action under the circumstances of this case. "Federal courts 'have an independent obligation to ensure that they do not exceed the scope of their jurisdiction, and therefore they must raise and decide jurisdictional questions that the parties either overlook or elect not to press.'" *Bazile v. Fin. Sys. of Green Bay, Inc.*, 983 F.3d 274, 281 (7th Cir. 2020) (quoting *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 434, 131 S.Ct. 1197, 179 L.Ed.2d 159 (2011)). In other

---

[3] Defendants also note in their brief that *Evans Transp. Servs., Inc. v. Northland Servs., Inc.*, 2012 WL 727019, at *2 (W.D. Wash. Mar. 6, 2012), cited *Central Freight* for the same proposition.

words, as to issues that affect subject matter jurisdiction, the Court does have an obligation to research and address those issues, regardless of how they have been briefed by the parties.

This case was originally filed in state court and was removed by Defendants on the basis of diversity of citizenship. [Dkt. 1 at 2.] In their Proposed Amended Complaint, Plaintiff alleges that this court would have federal question jurisdiction over the Section 13706 claims and supplemental jurisdiction over the unjust enrichment claims against the Consignee Defendants pursuant to 28 U.S.C. § 1367. [Dkt. 31-1 at 6.] Defendants argue that Section 13706 does not confer federal question jurisdiction over Plaintiff's proposed claims. The Court agrees.

Plaintiff's reply brief contains the following statement:

> Courts have recognized that 49 U.S.C. § 13706 confers federal question jurisdiction when "a federally-required tariff is involved." *GMG Transwest Corp. v. PDK Labs, Inc.*, 2010 WL 3718888, at *2 (E.D.N.Y. Sept. 13, 2010); *see also Gulf Winds Int'l Inc. v. Almanzar*, 2021 WL 4481340, at *4 (S.D. Tex. Sept. 29, 2021) (citing *Fracht Fwo Inc. v. TPR Holdings LLC*, 2021 WL 1026130, at *2 (S.D.N.Y. Mar. 17, 2021). While not explicitly mentioned in 49 U.S.C. § 13706, regulations that govern motor carriers' collection of rates under Chapter 137 are specifically limited to cases including federal tariffs. *Gulf Winds Int'l Inc.*, 2021 WL 4481340, at *4 (citing *Gaines Motor Lines Inc v. Klaussner Furniture Indus. Inc.*, 734 F3d 296, 305 (4th Cir. 2013) (remaining citations omitted).

[Dkt. 34 at 6.] Plaintiff thus concedes, at least implicitly, that this Court has federal question jurisdiction over its Proposed Amended Complaint only if its Section 13706 claims involve "federally-required tariffs," and, indeed, there is much authority for that proposition, as the Plaintiff acknowledges in the passage quoted above.

This same authority leads to the conclusion that, to the extent that Section 13706 provides a federal cause of action at all, it does so only when a federally-required tariff is involved. For example, in *Gulf Winds* 2021 WL 4481340, at *4, the court noted:

> It's questionable whether [S]ection 13706 actually provides for a federal cause of action. At least two courts have determined that it doesn't. See *WEL Inc v Scotts*

*Co*, 2012 WL 12933224, *3-4 (W.D. Tenn.) (addressing jurisdiction pursuant to 28 USC §§ 1331 and 1337); see also *Evans Transportation Services v Northland Services Inc*, 2012 WL 727019, *2 (W.D. Wash.) (citation omitted). But at least two others have determined that § 13706 does provide a federal cause of action for the collection of freight charges. See *Fracht FWO Inc v TPR Holdings LLC*, 2021 WL 1026130, *2 (S.D.N.Y.) (addressing jurisdiction pursuant to 28 USC § 1331), citing *GMG Transwest Corp v PDK Labs Inc*, 2010 WL 3718888, *2 (E.D.N.Y.) (addressing jurisdiction pursuant to 28 USC § 1337). Pertinent here, however, one of the courts that found a federal cause of action to exist emphasized that § 13706 can only "serve as the basis for subject matter jurisdiction" when "a federally-required tariff is involved." *Fracht*, 2021 WL 1026130 at *2. The surrounding statutory and regulatory context is in line with this approach.

Plaintiff does not allege in the Proposed Amended Complaint that any federally-required tariffs were involved in the shipments at issue in this case or allege any facts that would suggest that is the case; indeed, the Proposed Amended Complaint does not contain the word tariff at all. Defendants correctly note in their response brief that the only federally-required tariffs that survived the deregulation of the commercial trucking industry, *see* the Trucking Industry Regulatory Reform Act of 1994, Pub. L. 103-311, 108 Stat. 1673, and the ICC Termination Act of 1995, Pub. L. No. 104-88, 109 Stat. 803, 852, are tariffs that relate to "'movements by or with a water carrier in noncontiguous domestic trade—i.e., joint motor-water shipments involving Alaska, Hawaii, or United States territories—and movements of residential household goods paid for by the householder.'" [Dkt. 33 at 12 and n.3] (quoting *Radiant Global Logistics, Inc. v. En Pointe Techs., Inc.*, 2012 U.S. Dist. LEXIS 115269, at *6 n.2 (C.D. Cal. Aug. 14, 2012)); *see also Munitions Carriers Conf., Inc. v. United States*, 147 F.3d 1027, 1029 (D.C. Cir. 1998) ("In 1995 the Congress found that motor carriage had become a 'mature, highly competitive industry where competition disciplines rates far better than tariff filing and regulatory intervention,' and that rate regulation was no longer necessary except for '[two] specialized categories of trucking operations.' S. Rep. No. 104-176, at 10 (1995) (referring to household goods and certain

9

noncontiguous domestic trade))." This fact is codified in 49 U.S.C. § 13702, which provides that a carrier may provide transportation that is "in noncontiguous domestic trade, except with regard to bulk cargo, forest products, recycled metal scrap, waste paper, and paper waste [or] for movement of household goods . . . only if the rate for such transportation or service is contained in a tariff that is in effect under this section."  The term "household goods" is defined in 49 U.S.C. § 13102(10), and refers to "personal effects and property used or to be used in a dwelling" that is transported on behalf of a householder.  The term "noncontiguous domestic trade" is defined in 49 U.S.C. § 13102(17) as "transportation subject to jurisdiction under [49 U.S.C. § 13501, et seq.] involving traffic originating in or destined to Alaska, Hawaii, or a territory or possession of the United States."

Plaintiff does not assert, either in its Proposed Amended Complaint or its briefs, that any of the shipments to the Consignee Defendants involved "household goods" or "noncontiguous domestic trade" as those terms are defined in the statute.  Instead, Plaintiff simply asserts the following in its reply brief:

> Here, 49 U.S.C. § 13706 confers federal question jurisdiction over the claims against the Consignee Defendants.  QFS has alleged that its federal tariff ("Rules Circular") enables it to receive payment from the Consignee Defendants. [*See* Dkt. 31-1, 6-7.]  QFS's right to payment stems from 49 U.S.C. § 13706, which is under Chapter 137.  Because federal jurisdiction exists, supplemental jurisdiction over QFS's state law claims exists.  28 U.S.C. § 1367.  Therefore, QFS's Amended Complaint contains a federal question and raises no jurisdictional issues.

[Dkt. 34 at 6.]  In the cited pages of the Proposed Amended Complaint, [Dkt. 31-1 at 6-7], Plaintiff asserts that its Rules Circular "is available to the public at https://www.firststarlogistics.com/rules-circular/." *Id.* at 6.  Plaintiff does not allege in the Proposed Amended Complaint that the Rules Circular is a federally required tariff; nor does Plaintiff provide any support for its suggestion, quoted above, that it is.  Accordingly, Defendants have

demonstrated that Plaintiff's proposed claims under Section 13706 would be futile, and Plaintiff's motion to amend is **DENIED** as to those claims.

### C.  Analysis Under 28 U.S.C. § 1447(e)

The only basis for subject matter jurisdiction pled in the Proposed Amended Complaint is the Section 13706 claim.  Plaintiff concedes, at least implicitly, that in the absence of federal question jurisdiction, this court would lack subject matter jurisdiction over the Proposed Amended Complaint because there would no longer be diversity of citizenship among the parties.

> When joinder of a nondiverse party would destroy subject matter jurisdiction, 28 U.S.C. § 1447(e) applies and provides the district court two options:  (1) deny joinder, or (2) permit joinder and remand the action to state court.  See *Jass v. Prudential Health Care Plan, Inc.,* 88 F.3d 1482, 1486 (7th Cir. 1996).  These are the only options; the district court may not permit joinder of a nondiverse defendant *and* retain jurisdiction.  See *Mayes v. Rapoport,* 198 F.3d 457, 462 (4th Cir. 1999); *see also* David D. Siegel, *Commentary on 1988 Revision of Section 1447, in* 28 U.S.C.A. § 1447 (2009) (noting that Congress rejected an approach permitting a court to allow joinder and retain the case).  A district court has discretion to permit or deny post-removal joinder of a nondiverse party, and the court should balance the equities to make the determination.  *Mayes,* 198 F.3d at 463; *see also Perez v. Arcobaleno Pasta Machs., Inc.,* 261 F.Supp.2d 997, 1001 (N.D. Ill. 2003); *In re Bridgestone/Firestone, Inc.,* 129 F.Supp.2d 1202, 1204 (S.D. Ind. 2001).

*Schur v. L.A. Weight Loss Centers, Inc.*, 577 F.3d 752, 759 (7th Cir. 2009) (footnote omitted).  In *Schur*, the Seventh Circuit adopted a "framework for determining whether post-removal joinder of a nondiverse party is appropriate," which requires the examination of the following factors:

> (1) the plaintiff's motive for seeking joinder, particularly whether the purpose is to defeat federal jurisdiction; (2) the timeliness of the request to amend; (3) whether the plaintiff will be significantly injured if joinder is not allowed; and (4) any other relevant equitable considerations.

*Id.* (footnote omitted).

11

With regard to the first factor, Defendants argue that it "weighs heavily against Plaintiff" because Plaintiff was aware of the Consignee Defendants when it filed this case and therefore "'there arises some suspicion of the plaintiff's motives to amend'"; namely, "'that the plaintiff is purposefully attempting post-removal actions with the sole purpose of seeking remand and defeating federal jurisdiction.'" [Dkt. 33 at 15] (quoting *Daly v. Nexstar Broad., Inc.*, 2020 WL 8920421, at *2 (S.D. Ind. May 6, 2020)). This argument is belied by the opening sentence of Defendants' brief: "Faced with the knowledge that its claims against Defendants Intermodal Cartage Co., LLC ("IMC") and IMC Companies—National Accounts, LLC ("IMCNA") are time-barred under its controlling contract with IMC, Plaintiff QFS Transportation, LLC ("QFS") belatedly seeks to add IMC's end-customers to its lawsuit." [Dkt. 33 at 1.] This, of course, offers a less "suspicious" explanation for Plaintiff's proposed amendment—a desire to hedge its bets against the possibility that Defendants' defense will be successful.[4] Also in Plaintiff's favor is the fact that Plaintiff attempted to plead a claim based on a federal statute and asserted—albeit misguidedly—that federal question jurisdiction would govern the proposed amendment. The Court sees no indication that Plaintiff's motive for seeking the amendment is to destroy federal jurisdiction; accordingly, this factor does not weigh against allowing the amendment.

With regard to the second factor, there is nothing untimely about Plaintiff's motion to amend, which was filed more than two weeks prior to the deadline for such motions and only two months after Defendants filed their Answer. That factor weighs in favor of Plaintiff.

---

[4] Plaintiff's Complaint alleges that the parties' contractual agreement is comprised of certain "Credit Applications and Invoices." [Dkt. 1-2 at 9.] Defendants allege in their Answer that the parties' Broker-Carrier Agreement is the only applicable contract between the parties and that it supersedes the agreements cited by Plaintiff. [Dkt. 8 at 2, 4.] Defendants' time-bar defense is based on the Broker-Carrier Agreement.

The third factor asks whether Plaintiff will be "significantly injured" if the amendment is not allowed. Defendants' only argument with regard to this factor is that Plaintiff "would not be significantly injured if joinder is denied, because its claims are dead on arrival." [Dkt. 33 at 18.] The Court has rejected Defendants' arguments regarding the futility of Plaintiff's proposed unjust enrichment claims against the Consignee Defendants, however, so this argument does not weigh against Plaintiff. Plaintiff would be prejudiced if it had to pursue its claims regarding the freight charges at issue in two separate courts. Relatedly, as to the final factor, judicial economy would be served by allowing these claims to be brought in a single lawsuit. And while Defendants note as an equitable consideration that it believes, pursuant to a forum selection clause, that the claims in this case must be litigated in Shelby County, Tennessee, [Dkt. 33 at 18], the forum issue can be litigated in state court, so Defendants will not be prevented from pursuing that argument if the case is remanded.

Having examined all of the relevant factors, the Court, in its discretion, determines that the proposed amendment should be permitted, even though it will presumably[5] eliminate this court's subject matter jurisdiction over this case.

### III. Conclusion

For the reasons set forth above, Plaintiff's motion to amend is **GRANTED IN PART** and **DENIED IN PART**. **Within fourteen days of the date of this Order**, Plaintiff may file an Amended Complaint in substantially the same form as that found at Document Number 31-1 (plus exhibits), except that Plaintiff shall remove the claims under Section 13706 and the

---

[5] The Court notes that the citizenship of all of the Consignee Defendants has not yet been established, although neither party asserts that they are all diverse from Plaintiff.

allegations regarding federal question jurisdiction. Plaintiff shall either add allegations sufficient to demonstrate the existence of diversity jurisdiction or, if it is unable to do so in good faith, it shall file a motion to remand on the same date as it files the Amended Complaint. The motion to remand shall set forth all information necessary to establish the citizenship of each Consignee Defendant.

Defendants' Motion for Leave to File Surreply to Plaintiff's Motion for Leave to Amend [Dkt. 38], and Defendants' Motion for Oral Argument and Hearing [Dkt. 39] are **DENIED**.

SO ORDERED.

Dated: 4 MAY 2023

Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

Service will be made electronically on all
ECF-registered counsel of record via email
generated by the Court's ECF system.